**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cr-60222-BLOOM**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RICHARD PITCOCK,

      Defendant.

_____/

## **ORDER**

**THIS CAUSE** is before the Court upon Defendant Richard Pitcock's ("Defendant") Emergency Motion for Compassionate Release due to COVID-19 Outbreak at FCI Danbury, ECF No. [53] ("Motion"), filed on May 23, 2020. The Government filed its Response, ECF No. [55] ("Response"), on May 29, 2020. Finally, on June 2, 2020, Defendant filed his Reply to the Motion, ECF No. [56] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, Defendant's Motion is denied.

### I. BACKGROUND

On October 13, 2015, Defendant pled guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1), and one count of Possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). ECF No. [22]. Defendant was sentenced to a term of imprisonment of 95 months as to each count to be served concurrently, followed by fifteen years of supervised release as to each count to run concurrently, on December 15, 2015. ECF No. [36]. Currently, Defendant is housed at the Danbury Federal Correctional Institution ("Danbury FCI") in Danbury, Connecticut, and he is scheduled to be released from custody in May

2021. On May 23, 2020, Defendant filed the instant Motion requesting to be placed in home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the ongoing COVID-19 pandemic because his age and health conditions — namely, hypertension, chronic bronchitis, high cholesterol, and anxiety — put him at an increased risk of contracting the virus. ECF No. [53] at 4-5. The Government opposes Defendant's request. *See* ECF No. [55].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 1,994,000 confirmed cases and over 112,000 reported deaths as of June 11, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the BOP to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General makes an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated June 11, 2020).

of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate, and does not encourage indiscriminate release. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority

to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

In his Motion, Defendant requests that his term modify his sentence to time served under the compassionate release provision. Section 3582(c)(1)(A) provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings

the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

Defendant's Motion requests a sentence modification to home confinement based on his placement at FCI Danbury, where there is currently an outbreak of COVID-19, his underlying medical conditions, and the fact that he is 56 years old, which he contends place him within the most at-risk demographic for contracting severe and potentially fatal cases of COVID-19. The Government opposes Defendant's Motion, arguing that Defendant's failure to exhaust his administrative remedies, the absence of any extraordinary or compelling circumstances, and his danger to the community all compel the denial of his request.

As an initial matter, Defendant concedes that he has failed to exhaust his administrative

remedies with the BOP. ECF No. [56] at 2-4. This failure to exhaust the BOP remedies alone is sufficient to deny the requested relief. Nevertheless, even if Defendant had satisfied the exhaustion requirement, as explained below, he has failed to demonstrate that extraordinary and compelling circumstances exist or that he does not present a danger to society.

With regard to the "extraordinary and compelling reasons" test, Defendant is 56 years old and, as he explains in his Motion, he suffers from hypertension, chronic bronchitis, high cholesterol, and anxiety. CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19: people with moderate to severe asthma, people with chronic lung disease, people with diabetes, people with serious heart conditions, people with chronic kidney disease, people with severe obesity, people with chronic liver disease, people who are immunocompromised, people over the age of sixty five, and people who live in a nursing home or long-term care facility.[2] The Court is sympathetic to Defendant's medical conditions and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that hypertension and his risk of heart disease are risk factors designated in the CDC's guidance. However, Defendant does not allege that his health conditions are significantly deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release,

---

[2] *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated May 14, 2020).

U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release.").

Moreover, the Court must evaluate whether Defendant is a danger to the safety of others or the community under 18 U.S.C. § 3142(g). In making this determination, courts should consider "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; "(3) the history and characteristics of the person"; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g). Defendant pled guilty to the possession and transportation of child pornography, and he admitted to downloading, viewing, and transporting child pornography contained on numerous devices. ECF No. [37] at 4-9 (noting that Defendant is accountable for at least 1,153 images of child pornography); ECF No. [57-2] at 5-6. In addition, Defendant also admitted that he had been downloading and viewing child pornography for several years. ECF No. [37] at 9, ¶ 25; ECF No. [57-2] at 5-6. A computer forensic examination of Defendant's computers and external drives revealed numerous videos and still images of children under the age of 18 engaged in sexual activity. ECF No. [37] at 4-9. While the Defendant has served a majority of his sentence and has eleven months remaining, there is no evidence before the Court that he has completed any treatment regimen or programs that would inform whether the Defendant is no longer a danger. Dr. Brannon's Offender Risk Assessment, filed in support of the Defendant's Motion, is the same report the Court considered at the time of sentencing. Moreover, while the Defendant provides statistics and studies to support his claim that he falls within a low general recidivism rate, the Court has continuing concerns that this Defendant will reoffend. As such, the Court finds that Defendant's release to home confinement would pose a danger to the community.

In sum, because Defendant has not demonstrated that extraordinary and compelling reasons exist to justify his requested sentence modification, and because Defendant still presents a danger to the community, the Motion is denied.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [53]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 11, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Richard Pitcock
08443-104
Danbury
Federal Correctional Institution
Inmate Mail/Parcels
Route 37
Danbury, CT 06811